*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re JEFFERSON, Minors.

UNPUBLISHED
February 19, 2019

Nos. 343470; 343503
St. Clair Circuit Court
Family Division
LC No. 16-000388-NA

Before: CAVANAGH, P.J., and BORRELLO and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal by right the trial court's order terminating their parental rights to the minor children under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (without regard to intent, failure to provide proper care and custody),[2] and (j) (reasonable likelihood that the child will be harmed if returned to parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Respondents are the parents of two minor children. In May 2015, police and Department of Health and Human Services (DHHS) workers were alerted to problems concerning the minor children. Initially, one of the minor children was found alone on a playground and no one could

---

[1] *In re Jefferson Minors*, unpublished order of the Court of Appeals, entered May 2, 2018 (Docket Nos. 343470 and 343503).

[2] MCL 712A.19b(3)(g) was amended, effective June 12, 2018. See 2018 PA 58. Under the current version of the statute, statutory grounds exist to terminate a parent's parental rights if the court finds by clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Because the order terminating parental rights was entered on April 4, 2018, before the amendment took effect, the prior language of the statute is applicable.

reach either of their parents. Approximately three days later, respondent-mother was incarcerated and one of the minor children was again outside, this time without shoes or supervision. Then, in September 2015 police responded to respondents' residence for a domestic abuse call. It was alleged that respondent-father punched respondent-mother who then grabbed a knife for protection. All of this occurred in the presence of one of the minor children.

In June of 2016, after both minor children were found outside late at night without supervision, Child and Protective Services (CPS) began an investigation which lead to a conclusion that both respondents were addicted to numerous substances, such as heroin, cocaine, crack cocaine, prescription pills and marijuana. Prior, police had responded to a call and found respondent-mother passed out in the bathroom and unresponsive. Both minor children were present when this occurred. Additionally, respondent-father pled guilty to a domestic abuse charge and a delivery of narcotics charge during the pendency of this matter.

Based on its review of the record, the trial court terminated respondents' parental rights, for the basis as stated above. The trial court also found that termination was in the best interests of the children. This appeal then ensued.

## II. STANDARD OF REVIEW

On appeal from termination of parental rights proceedings, this Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. MCR 2.613(C); MCR 3.902(A); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Only one statutory ground for termination of parental rights needs to be established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013).

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 88-90. This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).

## III. RESPONDENT-MOTHER

## A. STATUTORY GROUNDS

In Docket No. 343470, respondent-mother first argues that there was not clear and convincing evidence to support the statutory grounds for termination. Respondent-mother's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provided the following at the time of the termination:

-2-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). The children, ages 11 and 5 at the time of the termination hearing, were brought into care because respondents had failed to provide proper care and custody for them. Respondent-mother pleaded to the allegations in the petition that set forth incidents of child neglect, improper supervision, drug overdoses, fear that a child had obtained a bag of heroin, and domestic violence. While her children were in foster care, respondent-mother was convicted of two separate crimes, one involving assault and battery and the other a financial transaction device, which resulted in her being placed on probation. She continued her use of illegal drugs. She did not address the domestic violence that occurred in her relationship with respondent-father. Her failure to comply with the requirements of the treatment plan provided clear and convincing evidence that there was no reasonable expectation that she would be able to provide proper care and custody for the children within a reasonable time considering their ages.

Our review of the record evidence reveals that respondent-mother, despite having 15 months of services, failed to comply or address the issues which led to the trial court taking jurisdiction of this matter. Her continued denial that she had any problems with illegal drugs or domestic violence, and her subterfuge in trying to dilute her drug screens and have unauthorized visitation with the children, ultimately led to the trial court correctly concluding that respondent-mother had not advanced to a place where she could be trusted with unsupervised visitation. Although respondent-mother admitted an earlier domestic violence incident, she denied a more recent incident where she had attacked an ex-girlfriend of respondent-father. Additionally, the trial court noted that respondent-mother refused to engage in domestic violence counseling. Throughout the case, respondent-mother continued to use illegal substances. Although she

attended many drug screens, she tested positive numerous times, even while she was participating in a methadone program. The trial court's reiteration of her drug screen history during this case tells the story of a person who never stopped using illegal substances for more than a short period of time and never was able to overcome her substance abuse issues. Despite the fact that respondent-mother never missed a visitation, maintained housing that would be suitable for the children[3], and partially complied with the requirements of the treatment plan, she was never trusted with unsupervised visitation. Based on the record before us, the trial court did not err when it found that the conditions that led to the adjudication continued to exist. And, as the trial court aptly noted, although respondent-mother attended all visitation (though at one visitation she slept) and demonstrated her love for her children, during the 15 months this case was pending in the trial court, respondent-mother never addressed the issues that led to the adjudication. The trial court found clear and convincing evidence to support the conclusion that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages. Following our review of the record, we cannot find any error in the trial court's findings. Therefore, we hold that the trial court did not clearly err in finding clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*).

## B. BEST INTERESTS

Next, respondent-mother contends that the trial court clearly erred in finding by a preponderance of the evidence that termination of her parental rights was in the best interests of the children.

In making the best-interest determination, the trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted). Other considerations include the length of time the child has been in foster care or placed with relatives, the likelihood that "the child could be returned to her parents' home within the foreseeable future, if at all," and compliance with the case service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they can be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. [*In re Moss*, 301 Mich App at 88-89 (emphasis in original).]

In making its best interest determination, the trial court took into consideration the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the

---

[3] Although the trial court noted that respondent-mother had maintained suitable housing for the minor children, the question was left open as to whether respondent-father was living there and conducting illegal narcotics sales out of the home.

child's need for permanency, stability, and finality, *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011), and the advantages of a foster home over the parent's home, *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made. MCL 712A.19b(5); see also MCR 3.977(E)(4)." *Olive/Metts Minors* 297 Mich App at 42. The trial court noted there was evidence of a very strong bond between respondent-mother and the children. As previously indicated, respondent-mother never missed a visit with her children, which demonstrated her strong feelings towards them. In addition, the chances for adoption of the 11-year-old child were not favorable given his age. However, there was clear and convincing evidence that the conditions that brought the children into care would not be rectified within a reasonable time and the children had been in foster care for almost 16 months. Respondent-mother had demonstrated that she would not seriously address her drug addiction problem. She continued to use illegal substances during the entirety of this case, other than for a few weeks. She attempted to dilute her drug screens and lied about her drug use. She had been convicted of two crimes while the children were in foster care, and one was an assaultive crime. She never addressed the domestic violence issues between her and respondent-father and even denied that they existed. Her failure to comply with her treatment plan was evidence that she would not be able to parent these children. Taking all of the trial court's findings and the record evidence into consideration, we conclude that the trial court correctly found, by a preponderance of the evidence that termination of respondent-mother's parental rights was in the best interests of the minor children. Accordingly, respondent-mother is not entitled to relief.

## IV. RESPONDENT-FATHER

## A. STATUTORY GROUNDS

In Docket No. 343503, respondent-father raises the same issues raised by respondent-mother. He first contends that the trial court committed clear error in finding that statutory grounds for termination of his parental rights were established by clear and convincing evidence. Respondent-father's parental rights were terminated under the same grounds as respondent-mother—MCL 712A.19b(3)(c)(*i*), (g), and (j).

The respondent-father maintained employment and continued to financially support his children through payroll withdrawal and paying out-of-pocket expenses throughout this case. He also attended the hearings and every visitation except for when he was incarcerated, and there were no negative reports concerning his parenting. Nevertheless, as with respondent-mother, the trial court found that by clear and convincing evidence, the statutory grounds for termination of his parental rights were established.

The conditions that existed regarding respondent-father when the children were removed were substance abuse, domestic violence, and improper supervision. Respondent-father never addressed these issues and did not comply with his treatment plan. In fact, the record reveals that respondent-father stopped working with DHHS after his last probation violation. Despite his failure to comply with any of his treatment plan, respondent-father argues that he always properly cared for his children. Perhaps in his mind that was so, however, the evidence showed,

and respondent-father admitted to the allegations, that the children were being cared for by respondent-father when the youngest child, then aged two, was found outside with no supervision and improperly dressed for the weather. Later both children were found outside at 9:00 p.m. without adult supervision. Respondent-father acknowledged a domestic violence incident against respondent-mother in 2015, for which he was arrested, but denied that there had been any domestic violence involved in his relationship with respondent-mother since that time, despite the fact that he had pleaded guilty to domestic violence, incidents were noted in several police reports, and it was one of the convictions for which he was on probation.

With regard to substance abuse, respondent-father continually denied his use of illegal drugs. However, in June 2017 he was arrested for possession of cocaine, oxycodone, and heroin, and he had $817 in cash on his person at the time. He tested positive for those drugs but contended that he tested positive for cocaine because he kissed his girlfriend and she used cocaine. After testing positive, he stopped doing drug screens, stating that they were incorrect. Then, at the termination hearing, he contended that he never had any drugs in his possession when he was arrested in June 2017, even though it was in the police report and he pleaded guilty to those charges.

Furthermore, respondent-father never had his own residence. He did, however, provide DHHS with several addresses where he allegedly lived. When DHHS workers went to verify these addresses, none of the people present in the homes were familiar with respondent-father. Respondent-father admitted that maintaining suitable housing was one of the requirements placed on him for the return of the minor children to his care. During the pendency of these proceedings, because respondent-father never had suitable housing, he never had a place where he could bring his children. As previously indicated, although he testified that he did not live with respondent-mother after her home was designated as Section 8 housing, he was often found there, he gave that address to his probation officer, and the Drug Task Force witnessed several narcotics buys from him at that house before he was arrested.

Although respondent-father attended visitations, he had never reached the point where he was granted unsupervised visitation. Whenever services were mentioned to him respondent-father stated that he was not interested and did not need them. Before the filing of the termination petition, he did not engage in any counseling or treatment program. After the petition for termination was filed, he signed up for domestic violence counseling and attended eight classes. For 15 months, petitioner offered and referred services, provided help, held family team meetings, and facilitated and supervised his visitation. During this time, respondent-father refused to participate in services or drug tests. It was a clear sign of his attitude towards his treatment plan that, at the termination hearing, he testified that he would comply if petitioner would "be willing to work with me," i.e., do things his way. Only then, would he "try to take the test again."

The trial court took all of the factors into consideration and found that after 15 months, there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering the children's ages. MCL 712A.19b(3)(c)(*i*). Based on our review of the record, we cannot find that such findings constituted error by the trial court.

In addition, there was clear and convincing evidence to support termination of respondent-father's parental rights under MCL 712A.19b(3)(g) and (j). Respondent-father had failed to provide proper care and custody for his children and there was no reasonable expectation that he would be able to do so within a reasonable time considering the children's ages. His failure to comply with his treatment plan was further evidence that he would not be able to provide his children with proper care and custody and that they may be harmed if returned to him. *In re White*, 303 Mich App at 710-711. Respondent-father had done nothing during the time that his children were in foster care to demonstrate that he was ready or willing to accept his responsibilities and comply with the requirements to work toward reunification. Accordingly, we hold that the trial court did not clearly err in finding that clear and convincing evidence supported the statutory grounds for termination of respondent-father's parental rights.

## B. BEST INTERESTS

Next, respondent-father argues that the trial court clearly erred in finding that termination of his parental rights was in the best interests of the children. MCL 712A.19b(5); *In re Laster*, 303 Mich App at 496; *In re Moss*, 301 Mich App at 88-90; *In re Hudson*, 294 Mich App at 264.

In making its findings on best interests, the trial court noted that respondent-father had a strong bond with the children. He attended all visits except when he was incarcerated. There were no negative reports about his appropriateness with the children. Although it was apparent to the trial court that the children would be seriously negatively affected by the termination, the trial court noted there were there are other factors to consider. First, the foster parent, a relative, would not be a candidate for guardianship because she was concerned about the hostile interactions of respondents toward her, and no other name had been mentioned. Additionally, respondent-father had demonstrated throughout this case that he would not comply with the requirements for reunification; he would only do what he wanted to do, which was to work and to visit the children. He would not accept the consequences of his own actions or address his lifestyle. He would not drug test, attend programs, or participate in counseling. He waited until after the termination petition was filed to attend a domestic violence class. In addition, he was not a credible witness. There was no likelihood that the children could be returned to him within the foreseeable future, if at all. He gave petitioner and the trial court no reason to believe that he would change his attitude and start to comply if provided more time.

The children had already been in limbo for 15 months. At this stage in the proceedings, their needs superseded any interest respondent-father had in maintaining parental rights. The children were entitled to stability, permanency, and safety. Based on this record, the trial court did not clearly err in finding that a preponderance of the evidence established that termination of respondent-father's parental rights was in the best interests of the children.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Stephen L. Borrello
/s/ James Robert Redford

-7-